IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARVIN THOMAS, N95712, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| WEXFORD HEALTH SOURCE, | ) |
| WILLS, | )   Case No. 23-cv-3502-DWD |
| ANGELA CRAIN, | ) |
| CONNIE DOLCE, | ) |
| JILL CRANE, | ) |
| MULDENHAUER, | ) |
| DEARMOND, | ) |
| BABICH, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Marvin Thomas, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center (Menard), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff alleges that the Defendants denied him adequate medical care for chronic conditions of back and knee pain, and for potential liver issues. Plaintiff also raises allegations against administrative officials (the Warden and healthcare administrators), and against Wexford, the corporate medical contractor for the IDOC.

Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b).

Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed.  28 U.S.C. § 1915A(b).  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff's complaint concerns the treatment that he has received for chronic back and knee pain, as well as the follow-up care he has received after diagnostic testing in early 2022 showed that he either had a fatty liver or early cirrhosis of his liver.  Plaintiff presents his case as two claims: a claim for deliberate indifference by Wexford Health Sources, and a claim for deliberate indifference by prison healthcare providers and prison administrators.  (Doc. 1 at 4-11).  He alleges that Wexford has policies of deliberate understaffing, delaying care to save money, and denying adequate pain medications to save money.  He alleges that Wexford has been on notice that care in the IDOC facilities is inadequate since at least 2011 when it was named as a defendant to a class action lawsuit about the adequacy of care in IDOC.  (Doc. 1 at 5).  Plaintiff notes that the litigation—*Lippert v. Jeffreys*—was settled in 2019 with an agreement that defendants would 'fix' the systemic deficiencies that caused inmates to suffer unnecessarily.

Specific to his own situation, Plaintiff alleges that he had a CT scan in January of 2022 that showed "punctate 2.5mm fissural nodule along the mid right major fissure & showed the bones demonstrate bridging osteophytic spurring of the spine & fatty infiltration & possible early cirrhotic morphology of the liver & minimal coronary artery

calcification." (Doc. 1 at 5). He alleges that all of these issues are serious medical issues, that should be monitored, but that per Wexford's policies he was deliberately denied follow-up care for several issues. More specifically, he alleges that the "early cirrhotic morphology of the liver has been delayed causing him to suffer because of Wexford's policies to save money." (Doc. 1 at 5).

Plaintiff goes on to allege that since at least January of 2022, Defendants A. Crain (healthcare unit administrator), J. Crane (a nurse practitioner), Dolce (director of nurses), Dearmond (nurse practitioner), Muldenhauer (nurse practitioner), and Babich (doctor) were on notice of his back pain, and early cirrhotic and fatty liver. (Doc. 1 at 6). Plaintiff learned of his medical conditions by a CT scan in January of 2022, and he was informed that he should have follow-up care and treatment for these chronic issues. He placed many sick call slips asking to be seen for pain in his back and knees, and to be told more about the test results on his liver, but his requests were ignored from May to September of 2022. (Doc. 1 at 6).

In September of 2022, Plaintiff submitted an emergency grievance about his desire for follow-up care. Defendant Wills, the warden, deemed the grievance an emergency, but Plaintiff alleges that his care still was not expedited. (Doc. 1 at 6-7). He alleges that Defendant A. Crain (the healthcare unit administrator) confirmed that he was referred to be seen by the doctor or nurse practitioner on 6/11/22, 7/25/22, 8/17/22, and 8/18/22, but that he had yet to be seen. She noted he would be scheduled, but Plaintiff argues that because the issue came to light in an emergency grievance, Crain should have expedited the scheduling of an appointment. Plaintiff alleges that the grievance put Defendant

Wills on notice of his specific need for care, and he alleges more generally that Wills knew the healthcare unit was understaffed and was not providing inmates with needed care. (Doc. 1 at 7-8).

Plaintiff further alleges that from May of 2022 to July of 2023, Defendant Crain deliberately delayed his care.  He alleges he submitted another emergency grievance on December 19, 2022, but Defendants Crain and Dolce (the director of nurses) held the grievance and did not respond until June of 2023.  The same occurred with an emergency grievance he submitted on January 12, 2023.  Both grievances were deemed an emergency by the prison but did not get responses for nearly six months.  Plaintiff alleges that as a direct result of the events described, he was denied adequate care, and was left to suffer in pain.

As to the individual medical staff, Plaintiff alleges that he saw Defendant Dearmond (a nurse practitioner) and he asked for pain medication for his chronic back pain, but she indicated that all she could provide was Tylenol.  (Doc. 1 at 9).  Plaintiff informed Dearmond that Tylenol did not control or treat his pain, but Dearmond told him to "deal with it."  (Doc. 1 at 9).  Plaintiff asked Defendant J. Crane (a nurse practitioner) to explain the results of his CT scan and other tests that showed fatty tissue on his liver, but she neither explained these results, or provided pain medication for his back or knee.  (Doc. 1 at 9).  Plaintiff alleges when he saw Defendants J. Crane, Moldenhauer (a nurse practitioner), and Dearmond, he asked for stronger pain medication for his back and knee, as well as back and knee braces, but they told him he would not get any of those things because Wexford would not approve them.  (Doc. 1 at

10).  Plaintiff alleges that he was treated like a nuisance from May of 2022 to September of 2022, and that during that time he suffered unnecessarily.

Plaintiff further alleges that Dr. Babich ordered blood tests, but he never explained the results, or why the results showed certain numbers.  Plaintiff alleges he was eventually told that he had fatty tissue and cirrhotic morphology of his liver, but he does not know if the results of the bloodwork also revealed those issues.  (Doc. 1 at 10).  He alleges that *if* his bloodwork did in fact reveal liver issues, Dr. Babich should have alerted him to these problems and he should have initiated a course of care.

Plaintiff alleges in closing that the Defendants enforced the Wexford policy to delay follow-up care, and to delay or deny specialist visits.  He seeks to sue the Defendants in their individual capacity, and to include Wills in official capacity for potential injunctive relief.  (Doc. 1 at 12).

In support of the complaint, Plaintiff appended grievance documentation that corresponds with the grievances he discussed.  He submitted an emergency grievance on September 14, 2022, that was deemed an emergency on September 19, 2022.  (Doc. 1 at 15-16).  The grievance officer prepared a memorandum about the emergency grievance which indicated that Plaintiff had been submitted to see a nurse practitioner for five months but had yet to be seen.  In the October 3, 2022, memorandum, Defendant Crain indicated that the healthcare unit scheduler had been notified and that Plaintiff would be seen soon by a doctor or nurse practitioner.  (Doc. 1 at 17).  Based on this report, the grievance officer deemed the grievance moot, and the warden concurred.  (Doc. 1 at 14).

Plaintiff submitted another grievance as an emergency on December 19, 2022, and it was deemed an emergency on December 22, 2022. (Doc. 1 at 20-21). Defendant Dolce responded to the grievance officer by memorandum on May 25, 2023. (Doc. 1 at 22). In the memorandum, Dolce indicted that Plaintiff was seen by an offsite GI specialist on March 15, 2022, and that on July 26, 2022, Dearmond ordered labs and made an urgent referral for an ultrasound. The labs were drawn in mid-August 2022, and ultrasounds were completed on September 2 and 6, 2022. Plaintiff was seen by Defendant Crane on October 7, 2022, and Crane noted that the labs and ultrasound results were discussed at length. Plaintiff was seen by Defendant Moldenhauer on January 28, 2023, and he had a GI follow-up on April 26, 2023. He was referred for a liver ultrasound, and was to be scheduled for a follow-up offsite. Given this recitation of appointments, the grievance officer concluded that the grievance was moot, and the warden concurred on June 2, 2023. (Doc. 1 at 19).

Plaintiff submitted a third emergency grievance on January 12, 2023, which the warden deemed an emergency on January 18, 2023. (Doc. 1 at 25-26). In a May 25, 2023, Memorandum, Defendant Dolce indicated that Plaintiff complained he hadn't had an EKG or blood tests for his liver problem. Dolce reported that he had an EKG on April 21, 2023. He also had offsite ultrasound appointments for his liver in September of 2022. He was scheduled for a blood draw on April 7, 2023, but it had to be rescheduled because he was uncooperative. (Doc. 1 at 27). Based on Dolce's findings, the grievance officer found the grievance to be moot, and the Warden concurred on June 2, 2023. (Doc. 1 at 24).

Based on the allegations in the Complaint, the Court will designate the following claims:

**Count 1:** **Eighth Amendment deliberate indifference claim against the medical providers—Defendants Dearmond, J. Crane, Muldenhauer, and Babich—for their handling of Plaintiff's medical conditions from January of 2022 thru July of 2023.**

**Count 2:** **Eighth Amendment deliberate indifference claim against the administrative staff—Defendants Wills, A. Crain, and Dolce—for their role in delaying or denying needed care;**

**Count 3:** ***Monell* claim against Wexford Health Sources for maintaining polices or practices that delayed or denied Plaintiff's care for his back, knee, and liver.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Analysis

### Claim 1

Plaintiff alleges that on various occasions, Defendants Dearmond, J. Crane, and Muldenhauer denied him needed care for his back pain, knee pain, and liver issues. Specifically, he alleges that Dearmond would only provide him Tylenol despite knowing that it was ineffective, and all three providers refused to change his medication or to order knee or back braces because Wexford would not approve these items. Plaintiff alleges

that he had an appointment with J. Crane, but that at the appointment she refused to discuss the test results or implications of potential issues with his liver that had been revealed by a January 2022 CT scan.  While allegations of this nature certainly could form the basis for a deliberate indifference claim, the Court is a bit skeptical of the facts pled by Plaintiff.

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component.  *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010).  A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard).  *Id.*  To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health.  *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).  Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference.  *Id.*  Additionally, an inmate is not entitled to demand specific care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).  If an inmate alleges a delay in treatment, he must present verifying medical evidence that the delay, and not the medical condition itself, caused some harm.  *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013).  He must also show it was the defendant's actions or inaction that caused the delay in treatment.  *Walker*, 940 F.3d at 964.

Plaintiff alleges both in his complaint and in attached grievance documentation that he did not have any care from May of 2022 thru September 14, 2022, when he filed a

grievance, but the memorandums in response to his grievances suggest somewhat of a different story.  Per a May 25, 2023, memo from Defendant Dolce, Defendant Dearmond order labs and an ultrasound on July 26, 2022.  (Doc. 1 at 22).  Plaintiff had labs in August of 2022, and two ultrasounds in September of 2022.  His September 14, 2022, grievance sought further follow-up, but he was then seen by Defendant Crane on October 7, 2022, at which time her notes allegedly reflect that his ultrasound and lab results were discussed at length.  (Doc. 1 at 22).   Plaintiff was seen again on January 28, 2023, by Defendant Dearmond, and he was scheduled to follow-up with a GI specialist on April 26, 2023.

The contents of the grievances suggest that while there may have been some apparent delays in care, Plaintiff was perhaps seen by providers a bit more often than he let on in his complaint.  The Seventh Circuit has stated in relation to inmate litigation that, "a complaint can also allege too much; a plaintiff may unwittingly plead himself out of court by alleging facts that preclude recovery." *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007) (noting that an inmate may plead himself out of court on a deliberate indifference claim if his complaint shows a mere disagreement with treatment, or if it does not show a deliberate disregard for a serious condition).

For now, the Court will allow Plaintiff to proceed against Defendants Dearmond, J. Crane, and Muldenhauer, because Plaintiff seems to allege that he saw these providers on multiple occasions and they offered no assistance for his chronic back or knee pain, other than Tylenol, which they knew to be ineffective.  Plaintiff alleges he also sought knee and back braces, but these providers told him they would not order those items

because the items would not be approved.  While Plaintiff cannot demand a specific course of care, or dispute a chosen course, he contends that the Defendants knowingly left him to suffer chronic pain.  This is enough at this early stage to proceed.

By contrast, the Court will not allow Plaintiff to proceed against any of the providers concerning his alleged liver issues for a few reasons.  First, Plaintiff's own grievance documentation and complaint do not suggest that the Defendants provided absolutely no care, or that any delays caused a discrete harm.  Instead, the attached documents show that Plaintiff was seen by a specialist on March 15, 2022, that Dearmond ordered labs and ultrasounds in late-July of 2022 (which occurred in August and September), that Defendant Crane discussed the results at length in October of 2022, that Muldenhauer saw him on January 28, 2023, and that he had a follow-up with the GI on April 26, 2023.  This series of events does not suggest a total lack of care, nor has Plaintiff identified any physical harm that he sustained as a result of this prolonged course of assessment.

Plaintiff also attempted to include Dr. Babich in his deliberate indifference claim concerning his liver, but his allegations against Babich rely on speculation and assumptions.  Plaintiff alleges that Dr. Babich ordered lab tests at some unspecified time, and that Dr. Babich never discussed the results with him.  He alleges he does not know if the blood work showed issues with his liver, but that *if* the bloodwork could be tied to liver problems, then Babich should have reviewed these findings and implemented a course of treatment.  These allegations are not enough to suggest deliberate indifference by Dr. Babich because they rely on an unsupported guess that bloodwork might have

showed further health issues, and that assuming that to be true, Dr. Babich shirked responsibility by failing to review and discuss these findings with Plaintiff.

The allegations against Dearmond, Muldenhauer, Crane, and Babich are also all flawed in so much as Plaintiff has not identified any physical harm that he suffered as a result of delays in care. To substantiate a claim for deliberate indifference by delaying treatment, an inmate must allege that the delay itself caused additional physical harm or prolonged suffering, and he must eventually provide evidence of the same. *See e.g.,* *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *Chambers v. Sood*, . Here, Plaintiff has not identified any specific harm he has suffered as a result of the prolonged course of diagnosis and treatment for his liver issues, and thus his allegations amount only to a claim of psychological suffering. This is problematic because the Prison Litigation Reform Act provides that no federal civil action may be brought by an inmate for mental or emotional injury prior to a showing of a physical injury. 42 U.S.C. § 1997e(e). Without any plausible allegations to suggest a physical harm attributable to the delays in care, Plaintiff cannot proceed against Dearmond, Muldenhauer, Crane, or Babich concerning his alleged liver issues. The Court finds that Plaintiff may not proceed on Claim 1 against Defendants Dearmond, Muldenhauer, Crane, or Babich concerning their care for his liver problems.

Plaintiff may only proceed on Claim 1 against Defendants Dearmond, Crane, and Muldenhauer concerning his knee and back issues.

**<u>Claim 2</u>**

Plaintiff also alleges that a variety of prison administrators from the Warden to the Director of Nurses should be held responsible for delays in his care.

Starting with Warden Wills, Plaintiff alleges that Wills was put on notice of his need for care by his emergency grievances, but Wills did not ensure he received care. Plaintiff admits and supporting documents show that Wills deemed each of Plaintiff's grievances an emergency, which meant those grievances were forwarded for expedited handling.   Non-medical prison officials are generally allowed to defer to treating professionals, unless such deference would amount to ignoring an inmate's serious need. *See e.g., Berry, 604 F.3d at 440-41* (the law encourages non-medical security and administrative personnel to defer to the professional medical judgments of physicians and nurses without fear of liability).  By deeming Plaintiff's grievances emergencies, and transmitting them for expedited handling, Warden Wills appropriately delegated further management of Plaintiff's medical care back to medical staff.

Generally, high-level prison administrators are not held liable under the Eighth Amendment solely on the basis that they might have received a single piece of correspondence about an inmate's need for assistance.  *See, e.g., Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009)* (a letter writing campaign to prison officials is not sufficient to create personal liability for a § 1983 claim).  However, if an inmate alleges that an administrator turned a blind eye to his plight, he may be able to state a claim.  *See e.g., Perez v. Fenoglio, 792 F.3d 768, 781-82 (7th Cir. 2015)* (an administrator cannot turn a blind eye to knowledge of an ongoing harm, and they cannot entirely shirk the duty to render aid).

A review of the attached grievance documentation suggests that during the time surrounding the three grievances, Plaintiff received a variety of care that was responsive to his concerns.  For example, on October 7, 2022, (the same day that Warden Wills approved the final denial of Plaintiff's first grievance as moot), Plaintiff was seen by Defendant J. Crane to discuss his labs and ultrasound findings on his liver issues.  (Doc. 1 at 17).  Though there were slow-downs between the December 2022 and January 2023 grievances being deemed emergencies, and the date when Plaintiff got responses to these grievances in June of 2023—the eventual responses suggest that during the relevant time Plaintiff was seen multiple times for ongoing care.  He had bloodwork done in November of 2022, he saw Dearmond on January 28, 2023, and he had a GI follow-up on April 26, 2023.  (Doc. 1 at 22, 27).  He also refused a blood draw in April of 2023.  (*Id.*).  These reports from the medical department to the grievance office, and ultimately back to Defendant Wills, suggest that medical staff was actively following Plaintiff's situation.

Given the available evidence, Plaintiff has failed to state a claim against Defendant Wills related to his handling of emergency grievances.  He has not clearly alleged that Wills turned a blind eye, or that as the Warden he should have done more than direct medical staff to investigate and remedy any underlying issues.  At best, Plaintiff might allege that Wills either did not follow-up on the grievances after he deemed them emergencies, or he did not closely supervise the grievance staff, but neither of these things seem to have impeded actual care, which was ongoing during the times the grievances were pending.  On the allegations presented, Plaintiff has failed to state a

deliberate indifference claim against Warden Wills, and the individual capacity claim against Wills will be dismissed without prejudice.

Plaintiff also alleges that Defendants Crain and Dolce participated in the delays of access to care because they received his grievances in December of 2022 and January of 2023, but did not provide responses to these emergency grievances until June of 2023. Plaintiff also alleges that in response to his September 2022 grievance, Crain acknowledged that there had been a 5-month gap in care, but she did not expedite his follow-up appointment. While delays by administrative personnel that specifically work with medical grievances or medical scheduling are more likely to form the basis for an adequate claim than allegations against a high-level administrator like Warden Wills, the Court does not find that Plaintiff has identified valid claims against Dolce or Crain.

As to Crain's alleged handling of Plaintiff's September 2022 grievance—he is correct that perhaps Crain *should* have noted that she would expedite his appointment when she realized he had been waiting for an appointment for five months, but as it turns out Crain did not *need* to do anything to secure quicker care in this instance. Plaintiff's grievance was reviewed by Crain on October 3, 2022, (Doc. 1 at 17), and on October 7, 2022, he was seen by Defendant J. Crane for a follow-up appointment. This suggests that just a few days after receiving Plaintiff's emergency grievance, Plaintiff got the care he sought.

The situation is different as to the December 2022 and January 2023 grievances, which the Warden quickly deemed emergencies, but which Defendant Dolce did not answer by memorandum to the grievance office until May 25, 2023. (Doc. 1 at 22, 27).

However, despite the apparently slow grievance response time—it appears from the contents of the memorandums that Plaintiff received at least some care in the intervening months. Notably, he saw Muldenhauer on January 28, 2023, he had an offsite EKG on April 21, 2023, he had a GI follow-up on April 26, 2023, and he had attempted labs on April 7, 2023 (which he did not cooperate with). Again, as with the claims against medical providers above, Plaintiff also does not allege any discrete physical injury which resulted from the delay in the processing of his grievances. Considering that Plaintiff was receiving some care during the period from December of 2022 and May of 2023, and given that he does not identify a discrete physical injury from delays during this time, Plaintiff will not be allowed to proceed on Claim 2 against Defendants Dolce, Crain, or Wills.

### Claim 3

Plaintiff named Defendant Wexford Health Sources at the outset of the complaint, and he identified a number of alleged policies that he claims caused him harm. Wexford is a private corporation that cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Thus, under *Monell*, for Plaintiff to recover from Wexford, he must show that the alleged constitutional violation was caused by: (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice; or (3) a person with final policymaking authority. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). *Monell* claims are difficult

to prove, and a key component of a *Monell* claim is a causal link between the identified policy and the injury sustained.   A plaintiff must show that "Wexford itself directly caused the constitutional violation."   *Dean*, 18 F.4th at 239.   "The rigorous causation standard requires a direct causal link between the challenged municipal action and the violation of the plaintiff's constitutional rights."   *Id.* at 236 (internal citations omitted).

Plaintiff has identified alleged policies in the form of understaffing, denying pain medications based on cost, and delaying follow-up care to reduce costs, but he has done little to link these alleged policies to his own experience, and he has not provided much beyond his individualized experience.   Plaintiff claims that understaffing delayed his care, and that Wexford slowed follow-up appointments to save money, but he does not have any evidence to support either of these theories.   Bare allegations unadorned by facts, are not sufficient.   As to the pain medication issue, he alleges that he was only offered Tylenol, but he does not link this medication selection or offering with any explicit desire to cut costs on behalf of Wexford.   Although Plaintiff has neatly presented allegations about Wexford in Claim 1 of his complaint, the reality is that he has not linked his clearly stated theories to his personal experience by anything more than speculation. He did not, for example, allege that staff denied him a medication and told him it would cost too much.   At best, he alleges they said that assistive braces would be denied.

On the allegations presented, the Court finds that Plaintiff's complaint reads more like a series of issues with staff at his local prison, than it is an issue with Wexford's provision of care to the prison.   *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021) (one key is to distinguish between the wrongdoing of one or a few rogue

employees and other, more widespread practices).  The Court also notes that, aside from a reference to class action litigation against Wexford, Plaintiff does not provide any examples beyond his own to support his claims against Wexford.  Although there are not bright-line rules that require a plaintiff to show a certain number of violations before he or she can make out a *Monell* claim, allegations of policies or customs that impact other similarly situated patients make a *Monell* claim more persuasive.  *Howell*, 987 F.3d at 655-56.  Here, Plaintiff's allegations are more akin to isolated wrongdoing than they are to a widespread and pervasive problem.  The Court finds that as presented, Plaintiff has failed to make out a claim against Wexford because he has not identified causal links between the alleged policies and his own experience, and he has not sufficiently alleged that the issue is widespread or so serious that his personal experience is enough to sustain a claim.

## Motion for Recruitment of Counsel

Plaintiff has moved for recruited counsel (Doc. 2).  In his motion he did not indicate a level of education, but he alleged that he had a fellow inmate write his complaint because he does not "understand the words."  (Doc. 2 at 2).  His Motion is accompanied by correspondence with a variety of attorneys from whom he sought representation. (Doc. 2 at 3-12).

There is  no right to the appointment of counsel in civil matters.  *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010).  When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]"

*Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff has clearly attempted to retain his own counsel, but this is not the end of the inquiry. At this very early juncture, Plaintiff has done a sufficient job presenting his claims, and the next stages will involve the exchange of basic information. Based on the early status of this litigation, the Court will deny Plaintiff's motion without prejudice.

### Disposition

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives against Defendants Dearmond, J. Crane, and Muldenhauer concerning Plaintiff's chronic knee and back pain. By contrast, **Claim 1** is dismissed as insufficient against Dr. Babich in full and it is dismissed against all named defendants concerning liver issues, **Claim 2** against Wills, A. Crain, and Dolce is dismissed for failure to state a claim, and **Claim 3** against Wexford Health Sources, Inc., is also dismissed for failure to state a claim. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants Dr. Babich, Wills, A. Crain, Dolce, and Wexford Health Sources, Inc., for failure to state a claim.

The Clerk of Court is **DIRECTED** to prepare for Defendants: Dearmond, J. Crane, and Muldenhauer: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service

on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

Plaintiff's Motion for Counsel (Doc. 3) is **DENIED** without prejudice.  Plaintiff's Motions for Leave to Proceed In Forma Pauperis (Docs. 9, 10) are **DENIED** as **MOOT**, because he was granted IFP status at document 8, and assessed an initial fee of $33.03. Plaintiff has already begun payments towards this fee.

**IT IS SO ORDERED.**

Dated: January 5, 2024

/s *David W. Dugan*

_____

DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.