IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MARVIN THOMAS, N95712,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 23-cv-3502-DWD |
| | ) |
| **JILLIAN CRANE,** | ) |
| **MICHAEL MOLDENHAUER,** | ) |
| **ALISA DEARMOND,** | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Marvin Thomas, an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at Menard Correctional Center ("Menard"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Specifically, he alleges that the defendants failed to treat or delayed treatment for his chronic knee and back problems. Defendants filed a Motion for Summary Judgment (Docs. 33, 34) on the issue of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Plaintiff responded. (Docs. 39, 40). He has also filed three motions for status (Docs. 41, 42, 43) and a Motion for an Extension (Doc. 43). The evidence supports Plaintiff's contention that he exhausted or attempted to fully exhaust his administrative remedies as to these claims, so the Motion (Doc. 33) will be denied.

## BACKGROUND

Plaintiff alleges in the complaint that since January of 2022, Defendants J. Crane, Dearmond, and Moldenhauer have been aware of his medical issues. (Doc. 1 at 6). He alleges that he placed many sick call slips asking to be seen for pain in his back and knees, but his requests were explicitly ignored from May to September of 2022. He specifies that Defendant Dearmond knew Tylenol was insufficient for his back pain, but told him to "deal with it," because she could not provide other medication. (Doc. 1 at 9). He alleges on occasions when he saw Defendants Crane, Moldenhauer and Dearmond, he asked for stronger pain medication for his knees and back and/or braces, but he was repeatedly told he would not get those things because Wexford would not approve them. (Doc. 1 at 10). He claims he was treated like a nuisance from May of 2022 to September of 2022, and suffered unnecessarily. There were additional defendants and allegations in the Complaint that the Court dismissed as insufficient for various reasons. (Doc. 15). Based on the allegations in the Complaint, which are more fully recounted in the Order of Initial Review (Doc. 15), the Court allowed one claim to proceed limited to Plaintiff's back and knee issues:

> Claim 1: Eighth Amendment deliberate indifference claim against Defendants Dearmond, J. Crane, and Moldenhauer for their handling of Plaintiff's medical conditions from January of 2022 thru July of 2023;

(Doc. 15 at 7-11).

The parties have submitted multiple relevant grievances that will be discussed below.

**FINDINGS OF FACT**

The exhibits from the parties include multiple grievances. One grievance explicitly mentions Plaintiff's chronic knee and back problems—grievance number 192-9-22. (Doc. 34-1 at 21-25). On September 19, 2022, Plaintiff filed grievance 192-9-22 wherein he alleged "I've put in for to see a nurse practitioner, doctor, it been five months…my knees it hurt me to walk, plus my chronic low back pain." (Doc. 34-1 at 29). He goes on to allege he had been told for months by nurses that he would see a nurse practitioner, but that no such appointment had occurred. He states, "why haven't I seen a nurse practitioner all of this time, if it 2 of them here, I've not saw nobody at all!" (Doc. 34-1 at 30). The grievance was deemed an emergency, and in a responsive memorandum a healthcare official indicated Plaintiff had been referred to see an MD/NP for "the above medical concerns" each month from May to August of 2022, but he had not yet been seen. The official indicated the medical scheduler had been notified, and that Plaintiff would be scheduled to discuss his medical concerns. (Doc. 34-1 at 31). The grievance officer recommended the grievance be denied as moot because it was "appropriately addressed by the medical professionals." (Doc. 34-1 at 28).

Plaintiff filed a timely appeal to the Administrative Review Board (ARB), but on October 21, 2022, they returned the grievance with a notation that it was "not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further." (Doc. 34-1 at 27). The official also noted, "discovery date given as 3/5months ago." (*Id.*).

Aside from grievance 192-9-22, Plaintiff highlighted December of 2022 and January of 2023 grievances that he submitted about problems with his liver. (Doc. 40 at 32-41). Of note, in response to one of the grievances, a memorandum from a healthcare official indicated that NP Dearmond ordered labs and an ultrasound related to liver issues for Plaintiff in late-July of 2022, Plaintiff was seen by NP Crane for the results in early October of 2022, and Plaintiff was seen by NP Moldenhauer of January 28, 2023. (Doc. 40 at 36).

As part of the grievance records, the Defendants also tendered a May 9, 2021, grievance wherein Plaintiff indicated he hurt his back in April of 2021 when he fell from a top bunk. (Doc. 34-1 at 36-37). As relief, one of the things he sought was a medical examination for his chronic back pain. (Doc. 34-1 at 35). The grievance office ultimately denied the grievance on May 12, 2021, after finding Plaintiff had been issued a low bunk permit, and the ARB affirmed finding the issue was appropriately addressed by the facility on May 25, 2021. (Doc. 34-1 at 34-35).

## Conclusions of Law

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal. *See e.g.*, *Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022,

1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). The regulations first require an inmate to file his grievance with his counselor within 60 days of the discovery of an incident, occurrence, or problem that gave rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). Administrative regulations require the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the names of the individuals are unknown to the offender, he can still file the grievance but "must include as much descriptive information about the individual as possible." *Id.* Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

If the complaint is not resolved through the counselor, the grievance may be submitted to a grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (CAO). 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's

decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* The ARB submits a written report of its findings and recommendations to the Director, who them makes a final determination. 20 ILL. ADMIN. CODE § 504.850(d), (e).

B. Analysis

The Court finds that the Motion for Summary Judgment can be resolved on paper without a *Pavey* hearing.

The Defendants primarily argue that the sole relevant grievance—192-9-22 was not properly exhausted because the ARB determined that it was submitted more than 60 days from the date of incident as required by the Illinois Administrative Code. In contrast to the ARB's finding, the prison addressed the grievance on the merits, and the grievance response indicated that Plaintiff's problems securing medical care persisted from at least June of 2022 through August of 2022. A healthcare official's responsive memorandum about the grievance indicated Plaintiff had repeatedly been referred to the MD/NP on 6/11/22, 7/25/22, 8/17/22, and 8/18/22, but he had yet to be seen. The official further indicated it appeared appropriate that he should be seen, and that the scheduler was contacted to ensure scheduling. These notations indicate that the issue Plaintiff raised in the grievance was a timely raised issued that persisted up to and through the date he filed the grievance in September of 2022. Against this backdrop, the ARB's conclusion that the grievance was untimely and concerned issues three to five months old is plainly wrong. *See, Laktas v. Wexford Health Sources, Inc.*, 2019 WL 3928690 at * 3 (S.D. Ill. Aug. 20,

2019) (finding that the ARB was incorrect to reject a grievance as filed beyond the 60-day timeframe where the events complained of were part of a continuing violation related to a medical need).

As a fallback, the Defendants argue that grievance 192-9-22 is insufficient to exhaust the claim against them because it concerns a scheduling problem, and not the care they provided. They do not cite any evidence other than the grievance itself. They do not provide evidence about when they saw Plaintiff for the issues he raises in this lawsuit. Specifically, in the sworn complaint, Plaintiff alleges that by January of 2022, Defendants Crane, Moldenhauer and Dearmond knew of his medical problems including chronic back pain. (Doc. 1 at 6). He also alleges that when he saw these providers they all refused sufficient pain medication or assistive braces for his back or knees. (Doc. 1 at 9-10). Additionally, in an affidavit in support of his response to summary judgment, he again attests from 2020 to 2022 he did his best to see Defendants Crane, Dearmond and Moldenhauer and spoke with them, but was unable to get the care he needed. (Doc. 40 at 4). Other documents in the grievance records indicate that as early as May of 2021, Plaintiff filed a grievance seeking medical care for chronic back pain after falling from his bunk. (Doc. 34-1 at 34-37). A memorandum prepared by healthcare officials in response to a grievance about liver issues is also illuminating because it indicates Plaintiff had interactions with Defendants Dearmond, Crane, and Moldenhauer from July 2022 through January 2023. (Doc. 34-1 at 16).

Against this backdrop, it cannot be said that Defendants have met their burden of establishing Plaintiff did not exhaust his remedies. It is true that grievance 192-9-22 does

not explicitly mention them by name, but the most important purpose of the exhaustion requirement is that the prison be put on notice of a problem with a chance to correct the situation.  *See e.g.*, Turley v. Rednour, 729 F.3d 645, 649 (7th Cir. 2013) ("primary purpose is to 'alert the state' to the problem and 'invite corrective action'").  The grievance clearly and unequivocally indicates that Plaintiff has been unable to secure needed care for his knee and back problems, and that this issue has been further complicated by the fact that he was repeatedly told he would be seen by the nurse practitioners but was never seen.  Couple grievance 192-9-22 with allegations in the complaint and other grievance documentation, and it can be deduced that Plaintiff alerted prison officials to his need for care for his chronic back and knee issues to no avail.  It can also be inferred that Plaintiff possibly had seen the Defendants prior to the months where he could not secure care and/or that he saw them afterwards in response to grievance 192-9-22 for the medical issues complained of in that grievance.

    The continuing violation theory does not always allow a single grievance about a medical condition to cover claims in perpetuity about a condition.  For example, there have been instances when a medical grievance has been found insufficient if it can be established that a named defendant did not work at the facility at the time of the grievance or had no role in treatment at that point.  *See e.g.*, Barrow v. Wexford Health Sources, Inc., 2019 WL 5681378 (7th Cir. Nov. 1, 2019) (finding that an inmate's grievances about extended treatment for an eye condition believed to require surgery were not sufficient to exhaust claims against a new medical director that took over at the facility 8 months after a grievance was filed); Reed v. Larson, 2019 WL 6769319 at * 3 (S.D. Ill. Dec.

12, 2019) (finding that one grievance about a doctor's treatment might have sufficed to grieve a course of that doctor's treatment, but a grievance about a medical condition could not be sufficient to exhaust a claim "against a doctor whose conduct had not yet had any effect on [plaintiff]."); *Burt v. Harrington*, 2017 WL 468211 at *4-5 (S.D. Ill. Feb. 3, 2017) (finding that an inmate's grievance that a "medical doctor" did not refill his Motrin prescription did not exhaust claims against three named doctors where there was no evidence any of them treated him or had interactions with him prior to the grievance, and where he got two Motrin prescriptions within days of filing the grievance). Here, it is certainly possible that Defendants Dearmond, Crane, or Moldenhauer had not seen Plaintiff at the point he filed the September 2022 grievance, but they did not provide any evidence or argument to this extent, and the burden was theirs. By contrast, Plaintiff indicated by his sworn complaint and his affidavit that he had seen them and tried to work with them about these issues. The burden was with the Defendants, and the Court does not find they have provided enough information to create a genuine dispute of fact about the sufficiency of the grievance to exhaust Plaintiff's claim, so their Motion for Summary Judgment must be denied.

### Requests for Counsel

In his response (Doc. 40) to the Defendant's Motion for Summary Judgment, Plaintiff spent significant time reiterating his desire for appointed counsel in this matter. Plaintiff states he has very little understanding of the proceedings, he has just a fifth-grade education, and he struggles with mental "gaps" associated with his mental

condition and/or his psychotropic prescriptions. (Doc. 40 at 7-21). Plaintiff also states that no one is helping him anymore with this lawsuit. (*Id.* at 8). Plaintiff included proof of his efforts over time to seek his own counsel. (Doc. 40 at 22-26). Plaintiff also sought multiple status updates on his request for counsel and the Motion for Summary Judgment (Docs. 39, 41, 42, 44).

Civil litigants do not have a constitutional or statutory right to counsel. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007); *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995). Under 28 U.S.C. § 1915(e)(1), however, this Court has discretion to recruit counsel to represent indigents in appropriate cases. *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). In evaluating whether counsel should be appointed, this Court must examine what are known as the *Pruitt* factors and apply them to the specific circumstances of this case. *Santiago v. Walls*, 599 F.3d 749, 760 (7th Cir. 2010). The Court must ask: "'(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Id.* at 761, *quoting Pruitt*, 503 F.3d at 654.

Here, Plaintiff has made efforts to recruit his own counsel, and he has also worked to the best of his ability to pursue the case on his own. Most recently, he has filed a response to the Defendants' Motion for Summary Judgment, with which he included copies of relevant grievances as well as his own affidavit. Despite composing this document, he argues that he has just a fifth-grade education level and can no longer secure assistance from fellow inmates. The Court is to consider Plaintiff's ability absent help from others. There is a notable difference between the clarity of Plaintiff's complaint,

and the subsequent arguments presented in his response (Doc. 40) and subsequent motions. Additionally, the matter was limited at this phase of the case to the exhaustion of administrative remedies, which is a relatively narrow and straightforward issue. The case will now advance to the merits of Plaintiff's claim, which concerns the adequacy of care provided for chronic medical issues (knee and back pain). The Court recognizes that the Seventh Circuit has emphasized the complexity of medical claims, particularly those where there may be a debate about the standard of care and the care given relative to that standard. *See e.g.*, *Eagan v. Dempsey*, 987 F.3d 667, 683 (7th Cir. 2021) (emphasizing the complexity of some medical claims for pro se litigants).

At this juncture, the Court finds it appropriate to appoint counsel based on Plaintiff's education level and his contentions he can no longer diligently maintain this matter on his own. Counsel will be appointed by separate order.

## DISPOSITION

The Motion for Summary Judgment on the issue of exhaustion filed by Defendants Dearmond, Crane, and Moldenhauer (Doc. 33) is **DENIED**. Claim 1 shall proceed as previously limited to Plaintiff's knee and back issues. (Doc. 15). A merits discovery schedule will issue separately.

Plaintiff's requests for counsel and for a status update on the case (Docs. 39, 40, 41, 42, 44, 45) will now be **GRANTED**, and counsel will be appointed by separate order. Plaintiff's Motion for an Extension (Doc. 43) is **DENIED** as **MOOT** because he inquires

about any Court correspondence he may have missed during a lockdown at Menard, but he did not miss anything.

**IT IS SO ORDERED.**

Dated: December 16, 2024

/s *David W. Dugan*

_____
DAVID W. DUGAN
United States District Judge